IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE

FILED

February 16, 1999

Cecil W. Crowson
Appellate Court Clerk

**FOR PUBLICATION**

JOHN JAY HOOKER, )
    Petitioner, )
     )
vs. ) **Filed: February 16, 1999**
     )
DON SUNDQUIST, et al., ) Davidson Chancery
    Respondents, )
     )
and )
     )
JOHN JAY HOOKER, )
    Petitioner, ) No. 01A01-9709-CH-00533
     )
vs. )
     )
FRED D. THOMPSON, )
    Respondent. )

## OPINION ON PETITION FOR REHEARING

In this case, we consider whether Tennessee law affords a basis for the
Chief Justice of the Supreme Court of Tennessee to appoint Special Supreme
Court Justices. The petitioner, John Jay Hooker, has filed a petition to rehear in
this cause pursuant to T.R.A.P. 39(a)(2). This cause was originally filed before
this Court by the petitioner on May 19, 1998 pursuant to T.R.A.P. 11. The
petitioner proceeded to file a motion on June 12, 1998 requesting that all
members of this Court recuse themselves due to conflict of interest. Such motion
was denied on July 7, 1998.

On August 27, 1998, the petitioner filed a renewed motion to recuse, specifically requesting that Chief Justice Anderson, and Justices Birch and Holder recuse themselves due to alleged conflicts of interest. In response, on September 16, 1998, the Chief Justice filed an order designating and assigning Judge Gary R. Wade of the Court of Criminal Appeals and Judge Charles D. Susano, Jr., of the Court of Appeals to act as Special Justices of the Supreme Court for the purpose of participating in the review of the petitioner's Rule 11 application. On October 5, 1998, an Order was filed denying the petitioner's application for permission to appeal. Chief Justice Anderson and Justice Birch did not participate in said order, having been replaced by Special Justices Wade and Susano. The petitioner has proceeded to file this petition to rehear, contending that there is no basis in Tennessee law for Special Justices of the Supreme Court to be appointed by the Chief Justice.

The recusal of judges in this State is addressed by Article VI, § 11 of the Tennessee Constitution, which provides as follows:

> No Judge of the Supreme or Inferior Courts shall preside on the trial of any cause in the event of which he may be interested, or where either of the parties shall be connected with him by affinity of consanguinity, within such degrees as may be prescribed by law, or in which he may have been of counsel, or in which he may have presided in any inferior Court, except by consent of all the parties. In case all or any of the Judges of the Supreme Court shall thus be disqualified from presiding on the trial of any cause or causes, the Court, or the Judges thereof, shall certify the same to the Governor of the State, and he shall forthwith specially commission the requisite number of men, of law knowledge, for the trial and determination thereof. The Legislature may by general laws make provision that special Judges may be appointed, to hold any Courts the Judge of which shall be unable or fail to attend or sit; or to hear any cause in which the Judge may be incompetent.

Id. (emphasis added). We interpret this last sentence to authorize the General

Assembly to empower the appointment of substitute judges in the event that an elected judge is "unable . . . to attend or sit" or is "incompetent." Id.

The General Assembly has, in turn, enacted statutes conferring power to the Chief Justice of the Supreme Court to appoint replacement judges. Tennessee Code Annotated § 17-2-110(a) (1994) provides as follows:

> When any chancellor or circuit, criminal or <u>appellate</u> judge shall, <u>for any reason</u>, be unable to try the docket in any court of such chancellor's or judge's division or circuit, the chancellor or judge shall certify to the chief justice of the supreme court the fact of such inability, with a request that the chief justice shall assign some other chancellor, circuit, criminal or appellate judge to hear the case or cases which the chancellor or judge is unable to hear and decide.

(emphasis added). <u>See</u> <u>also</u> Tenn. Code Ann. §§ 16-3-201(d)(4); 16-3-401; 16-3-402 (1994) (conferring general powers to the Supreme Court to promulgate internal operating procedures); Tenn. Code Ann. § 16-3-502(3) (1994) (authorizing the Supreme Court to designate an administrative office of the courts to support the appointment of inferior court judges). We interpret the reference to "appellate judge[s]" in Tenn. Code Ann. § 17-2-110(a) to include judges of the Supreme Court. Tennessee Code Annotated § 16-3-201(a) states that the jurisdiction of the Supreme Court is "appellate only." Because the language of Tenn. Code Ann. § 17-2-110 does not limit the term "appellate" to intermediate appellate judges, it is logical to construe the provision to apply to all appellate judges, including judges of the Supreme Court.

This construction of Tenn. Code Ann. § 17-2-110 is also consistent with the legislative history of the provision. Originally enacted in 1919, the statute did not apply to appellate judges. <u>See</u> 1919 Tenn. Pub. Acts ch. 166, § 1. The statute

was amended in 1987 to include appellate judges. See 1987 Tenn. Pub. Acts ch. 65, § 2. The bill summary, which was provided to all legislators, states:

> This bill would authorize the chief justice of the Supreme Court to assign a retired or regular judge to the appellate court if the litigation becomes too congested or when an appellate judge is unable to try the docket in his division or court. Appellate judges assigned by the chief justice would be authorized under this bill to claim expenses in addition to salary.

95th General Assembly, Legislative Summary of Senate Bill 643 and House Bill 456. There is no mention anywhere in the legislative history suggesting that the amended statute should not apply to Supreme Court Justices.

The petitioner cites Tenn. Code Ann. § 17-2-102 (1994) for the proposition that only the Governor has the power to appoint substitute Supreme Court Justices. This statute provides that:

> The judges of the supreme court, within the first week of each term, or as soon thereafter as the fact shall come to their knowledge, shall certify to the governor all cases upon the docket in which either of them is incompetent to sit, upon the receipt of which certificate, the governor shall appoint and commission the requisite number of competent lawyers to dispose of the causes.

Id.; see also Tenn. Code Ann. § 17-2-104 (1994) (enabling the Governor to appoint a replacement Justice in the event that a sitting Justice is ill). The definition of incompetence is set forth in Tenn. Code Ann. § 17-2-101 (1994).

Notwithstanding the statutory language supporting the petitioner's proposition, we find it difficult to reconcile Tenn. Code Ann. § 17-2-102 with the clear language set forth in Tenn. Code Ann. § 17-2-110(a), which enables the Chief Justice to appoint a replacement judge in the event that a judge is unable to sit for "any reason." (emphasis added). Because this language is not qualified,

we construe "any reason" to include incompetence. Id. The bill summary of Tenn. Code Ann. § 17-2-110 refers to a broad inability of an appellate judge "to try the docket." Legislative Summary, supra. Certainly, incompetence would be included as a ground for an appellate judge's inability "to try [his or her] docket." Id.

Moreover, our ruling is consistent with the traditional practice of this Court. We believe that Tenn. Code Ann. §§ 17-2-102, 17-2-104, and 17-2-110(a) were promulgated with the intent to empower both the Governor and the Chief Justice to designate temporary judges.

The petitioner's motion is denied. It is so ORDERED

_____
William M. Barker,
Justice

**CONCUR:**
Drowota, Holder, J.J.
Wade, Susano, S.J.

Anderson, C. J. - Not participating
Birch, J. - Not participating